UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LEONARD BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00234-JMS-MJD |
| | ) | |
| WARDEN, Williamsburg Federal Correctional Institution,[1] | ) ) ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

The petition of Leonard Brown for a writ of habeas corpus challenges a prison disciplinary proceeding identified as Incident No. 3145365. Mr. Brown is currently confined at the Williamsburg Federal Correctional Facility in Salters, South Carolina (Williamsburg). The conduct giving rise to the discipline at issue occurred while Mr. Brown was confined at the Federal Correctional Complex in Yazoo City, Mississippi.

The case is properly before this Court because Mr. Brown filed his petition while he was incarcerated at the Federal Correctional Complex in Terre Haute, Indiana, and it was fully briefed before the Court learned of Mr. Brown's move to Williamsburg. In the interests of judicial economy, the Court exercises its discretion to decide the matter rather than transfer it to the petitioner's current district. *See Moore v. Olson*, 368 F.3d 757, 759-60 (7th Cir. 2004) (the location of collateral litigation pursuant to § 2241 is a matter of venue).

---

[1] Mr. Brown is currently confined at Williamsburg Federal Correctional Institution. Therefore, **the clerk is directed** to substitute the Warden at Williamsburg Federal Correctional Institution as the respondent. *See* Rule 25(d) of the Federal Rules of Civil Procedure.

For the reasons explained in this Order, Mr. Brown's habeas petition must be **denied**.

A.  Overview

Federal inmates seeking to challenge the loss of good time credits in prison disciplinary proceedings on due process grounds may petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Smith v. Bezy*, 141 F. App'x 479, 481 (7th Cir. 2005). In a prison disciplinary proceeding, the due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 570-71 (1974); *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011) (applying *Hill* and *Wolff* to federal prison disciplinary proceeding).

B.  The Disciplinary Proceeding

On July 12, 2018, Lieutenant Fisher wrote Incident Report Number 3145365 charging Mr. Brown with committing Prohibited Act 203: threatening another with bodily harm. The incident report states:

> On Thursday, July 12, 2018, at approximately 7:15 a.m. I Lieutenant P. Fisher was monitoring the morning meal, I entered food service and upon exiting Food service I looked directly at Inmate Brown, Leonard Register #54312-019 and notice that he was speaking in a loud and aggressive manner about a staff member (Food Service Officer Sylvester). Inmate Brown stated "He is dead" yall (the inmates that were eating in food service) ain't got to worry about his shit anymore. I then approached Inmate Brown and asked him what does he mean and [he] looked at me and stated "You know what I mean."

Dkt. 9-1 at 22.

Mr. Brown was notified of the charge later that day when he received the incident report. On July 14, 2018, Mr. Brown signed an affidavit regarding the incident in which he stated, in

pertinent part, that he saw another inmate, whom he referred to as "Chicago," being escorted out of the dining area by Lieutenant Fisher and that "it looked like [Chicago] might have had words with [Officer] Sylvester." *Id.* at 24. Mr. Brown stated he "walked over and told Chicago 'Don't worry they writing him up, he dead, Sylvester's kitchen workers writing him up.'" *Id.* Mr. Brown also stated that he "didn't threaten anyone." *Id.*

A hearing was held on July 28, 2018. Based on Mr. Brown's statement and the incident report, hearing officer Sawyer concluded that "anyway you look at the statement ["he is dead"] it is a threat," and found Mr. Brown guilty of Prohibited Act 203. *Id*. at 19-21. The sanctions imposed included deprivation of twenty-seven days of earned-credit-time and thirty days of disciplinary segregation.

On September 7, 2018, hearing officer Sawyer received notification that Mr. Brown's case had been reviewed and should be reheard with the charge of committing Prohibited Act 299 Most Like 203 instead of Prohibited Act 203. *Id.* at 5. Prohibited Act 299 is "[c]onduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act." 28 C.F.R. § 541.3 (table 1). It is "to be used only when another charge of High severity is not accurate" and "must be charged as 'most like' one of the listed High severity prohibited acts." *Id.*

On September 20, 2018, hearing officer Sawyer conducted a rehearing. At the rehearing, Mr. Brown neither admitted nor denied the charge and declined to make any statement. He did not provide any evidence to refute the charge against him. Dkt. 9-1 at 30.

After the rehearing, hearing officer Sawyer concluded that Mr. Brown had committed the charged act. *Id.* at 30-32. She based that conclusion on Lieutenant Fisher's eyewitness statement in the Incident Report that Mr. Brown had said "he is dead," the inmate witness's statement that

Mr. Brown had said "he already dead," and Mr. Brown's own admission that he had said "he's dead." *Id.* Hearing officer Sawyer concluded that "anyway you look at the statement ["he is dead"] it is a threat" and noted that Prohibited Act 299 Most Like 203 was the most appropriate charge because although Mr. Brown "did not state specifically [he] was going to inflict bodily harm[,]" his statement was "inflammatory." *Id.* Hearing officer Sawyer imposed the same sanctions as before: disallowance of 27 days of good conduct time (which had already been removed) and 30 days of disciplinary segregation (which Mr. Brown had already completed). *Id.*

On May 17, 2019, Mr. Brown brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### C. Analysis

Mr. Brown raises six grounds in support of his petition for habeas relief: 1) he is innocent of the charge; 2) Lt. Fischer's statement was fabricated and falsified; 3) his right to free speech was violated because his slang was taken as a literal threat, 4) the hearing officer was biased, 5) he was not given 24-hour notice of the rehearing and was not told why the charge was being reheard, and 6) the conviction was an act of retaliation in response to Mr. Brown's whistleblower complaint regarding the wrongful death of an inmate in the secured housing unit. Dkt. 1. The Court will address each ground for relief raised by Mr. Brown in turn.

#### 1. Insufficient Evidence

Mr. Brown's first ground for relief is that he is innocent. This ground is essentially a challenge to the sufficiency of the evidence and is governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . .

is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The incident report "alone" can "provide[] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

The incident report states that Mr. Brown spoke in a loud and aggressive manner and said, in reference to a food service officer, "'He is dead' yall (the inmates that were eating in food service) ain't got to worry about his shit anymore." Dkt. 9-1 at 37. The incident report is some evidence that Mr. Brown exhibited disruptive conduct most like threatening. Because there is some evidence of his guilt, Mr. Brown is not entitled to relief on this ground.

### 2. Fabricated Incident Report

Mr. Brown next contends that Lt. Fischer falsified the incident report. Prisoners do not have a constitutional right to avoid false disciplinary charges. *Lagerstrom v. Kingston,* 463 F.3d 621, 624-25 (7th Cir. 2006) (due process rights are not violated if a false conduct report is filed). Any impropriety with a conduct report and the investigation are properly addressed through the due process mandates of *Wolff*. "[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *McPherson v. McBride,* 188 F.3d at 787.

Mr. Brown asserts that the author of the conduct report lied when she said he was loud and aggressive and that she did not accurately report what he said. He contends that he was simply trying to calm down another inmate to prevent that inmate from receiving a conduct report. He

tried to do this by telling the other inmate that the food service officer was being written up so the inmate did not need to worry about the food service officer.

Mr. Brown had an opportunity to explain his side of the story to the disciplinary hearing officer as required by *Wolff*. The disciplinary hearing officer credited Lt. Fisher's statement over Mr. Brown's and found that Mr. Brown's statement was inflammatory and therefore disruptive. There is no due process violation and Mr. Brown is not entitled to relief on this ground.

### 3. Lack of Impartial Decisionmaker

Mr. Brown argues that the hearing officer was biased because 1) she was aware that Mr. Brown had filed grievances against her, 2) she did not respect people who did not speak correct English, 3) she participated in the coverup of the death of another inmate which Mr. Brown tried to expose, and 4) Mr. Brown was scheduled to be transferred to another facility before the rehearing which indicates that prison officials wanted him moved from the facility before he could contribute to the wrongful death investigation. Dkt. 2 at 14-15.

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam).

Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*, 355 F. App'x. 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the prison. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased

when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667. Mr. Brown has not alleged that the hearing officer was involved in the factual events underlying the disciplinary charge or its investigation.

This Court has acknowledged that there may be other scenarios in which a court could find that a hearing officer was biased. *Boyd v. Brown*, No. 2:15-cv-00006-JMS-MJD, 2016 WL 4440399, at *3 (S.D. Ind. Aug. 23, 2016) ("There is admittedly little appellate authority on other potential instances of bias in disciplinary cases, however, the determination of bias cannot only be restricted to questions dealing with direct involvement."). However, Mr. Brown's allegations against the hearing officer are akin to those rejected in *Piggie* and are insufficient to overcome the presumption of integrity. Therefore, Mr. Brown is not entitled to relief on this ground.

### 4. Violation of First Amendment Rights

Mr. Brown contends that he was punished in violation of his First Amendment rights for using slang. A prison may constitutionally restrict inmate speech when the restrictions are "reasonably related to legitimate penological interests." *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004). Determining whether a speech restriction is "reasonably related to legitimate penological interests" requires the courts to analyze the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), which include: (1) whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; (2) whether the prisoner has alternative means for exercising the alleged constitutional right at issue; (3) what impact accommodation of the prisoner's rights will have on prison administration; and (4) whether there are other ways that prison officials can achieve the same goals without encroaching on the prisoner's rights. *Id.* at 89–91.

Applying the first *Turner* factor, the Court finds that there is a valid and rational connection between the Bureau of Prisons' restriction of disruptive conduct most like threatening and the legitimate governmental interest of maintaining safety and security in the federal prison system. Second, Mr. Brown has other means of exercising his right to free speech, both by using slang that is not disruptive or threat-like and by expressing himself without being loud, aggressive, or disruptive. Third, allowing inmates to use all slang without restriction could impede the goal of maintaining a safe and secure environment. Inmates could use slang to communicate threats or plan escapes or other dangerous and disruptive actions without punishment. Finally, the fourth *Turner* factor weighs in favor of the respondent. Mr. Brown has not identified any viable alternatives for the prison to further its interest in safety and security and the Court is not aware of any such alternatives. Mr. Brown's use of slang in a disruptive manner akin to threatening was not protected by his First Amendment free speech rights and he is not entitled to relief on this ground.

### 5. Lack of 24-Hour Notice

Mr. Brown contends that his due process rights were violated because he did not receive adequate notice to prepare a defense against the Code 299 violation he was convicted of at his rehearing. Due process requires that an inmate be given advanced "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citations and quotation marks omitted); *see Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995) ("The notice should include the number of the rule violated . . . and a summary of the facts underlying the charge." (citations and quotation marks omitted)).

Mr. Brown waived his right to a written copy of the charge at least 24 hours prior to the

disciplinary hearing. Dkt. 9-1 at 42. However, he received the incident report on September 19, 2018 at 11:55 am and signed the waiver of his right to 24-hour notice on September 20, 2018 at 2:20 pm, more than 24 hours after he received the incident report.

Normally this would be the end of the analysis for this ground for relief, but there is an extra wrinkle in Mr. Brown's case. The disciplinary hearing officer changed the charge from Code 203, threatening, to Code 299, disruptive conduct most like threatening and Mr. Brown waived his right to 24-hour notice before he knew that the charge would be altered.

The Seventh Circuit has held that inmates have sufficient information to defend against a charge altered at or after a disciplinary hearing if the new charge involves the same factual basis as the original charge. *Moshenek v. Vannatta*, 74 F. App'x 639, 641 (7th Cir. 2003) (citing *Northern,* 326 F.3d 909).

Mr. Brown knew from his first incident report and disciplinary hearing that the factual allegations against him were that "he was speaking in a loud and aggressive manner about a staff member . . . [and] stated 'he is dead' yall (the inmates that were eating in food service) ain't got to worry about his shit anymore." Dkt. 9-1 at 31, 35, 37. He received the second incident report on September 19, 2018 at 11:55 am. Dkt. 9-1 at 41. The charge on the incident report was Code 203, threatening bodily harm.

The rehearing was held the next day, September 20, 2018. Dkt. 9-1 at 31. The hearing officer's report reflects that the charge was reduced to a Code 299 violation at the disciplinary hearing: "The DHO changed Code 203 to Code 299 most like Code 203, the most appropriate charge, as you did not state specifically you were going to inflict bodily harm. However, the statement was inflammatory." *Id*.

Although the focus of the charge changed from the threatening nature of Mr. Brown's words to the loud and aggressive manner in which he delivered them, he was given notice of the factual basis in the incident report that supported his eventual conviction of Code 299, disruptive conduct most like threatening.

Furthermore, Mr. Brown did not indicate how he would have defended himself differently if he had known the charge would be changed to a Code 299. It is possible he could have asked for witnesses to rebut the incident report's characterization of Mr. Brown as "loud and aggressive," but because those facts were alleged in the incident report, Mr. Brown could have sought to rebut them whether the charge was threatening or disruptive conduct most like threatening. The Court is unable to see how Mr. Brown was harmed by the lack of notice of the altered charge. *See Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011) (harmless error principle applies in disciplinary habeas actions). Mr. Brown is not entitled to relief on this ground.

### 6. Retaliation

Mr. Brown contends that his disciplinary conviction was an act of retaliation for his involvement in trying to expose the wrongful death of another inmate, his hunger strike, and other First Amendment activities. Retaliation is not a basis for habeas relief. Such a claim can only be brought in a civil rights action. See *Zimmerman v. Davis*, 90 F. App'x 157, 159 (7th Cir. 2004) (retaliation is not a viable ground for relief in a habeas action apart from the due process protections provided in *Wolff* and *Hill*). Mr. Brown is not entitled to habeas relief on this ground.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there

was no constitutional infirmity in the proceeding which entitles Mr. Brown to the relief he seeks. Accordingly, Mr. Brown's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 2/7/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

LEONARD BROWN
54312-019
WILLIAMSBURG - FCI
WILLIAMSBURG FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 340
SALTERS, SC 29590

Lara K. Langeneckert
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lara.langeneckert@usdoj.gov